UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| HANCOCK WHITNEY BANK | * | CIVIL ACTION |
| VERSUS | * | NO. 25-1152 |
| MOF-WILLOWS, LLC | * | SECTION "A" (2) |

## ORDER AND REASONS

Pending before is Movant Sewerage and Water Board of New Orleans' Motion for Leave to Intervene. ECF No. 16. Plaintiff Hancock Whitney Bank filed an Opposition Memorandum, and Movant filed a Reply Memorandum. No party requested oral argument in accordance with Local Rule 78.1, and the Court agrees that oral argument is unnecessary.

Having considered the record, the submissions and arguments of counsel, and the applicable law, Movant Sewerage and Water Board of New Orleans' Motion for Leave to Intervene is DENIED for the reasons stated herein.

## I.    BACKGROUND

Plaintiff Hancock Whitney Bank, as trustee for the owners of certain bonds pursuant to a Trust Indenture between it and The Finance Authority of New Orleans ("FANO"), filed suit against Defendant MOF-Willows, LLC. ECF No. 1. Plaintiff alleges that FANO issued the bonds to fund the acquisition, rehabilitation, and equipping of the Willow Apartments (the "Apartments"), and Defendant executed a loan agreement, a $13 million promissory note, a mortgage (recorded in Orleans Parish), and an assignment of leases and rents and securities agreement in favor of Plaintiff (collectively, the "Loan Documents"). *Id.* ¶¶ 4, 7, 10. Plaintiff alleges that Defendant defaulted on its obligations and seeks a judgment awarding it the outstanding loan amounts and recognizing, preserving and maintaining the mortgage's validity and enforceability and, among others, its rights to foreclose the mortgage and to appoint a receiver for the Apartments. *Id.* at 13-16.

1

The day after filing suit, Plaintiff filed an Unopposed *Ex Parte* Motion for Entry of Final Judgment based on Defendant's confession of judgment.  ECF No. 4.  On June 11, 2025, the Court entered a final judgment in favor of Plaintiff and granted the relief requested, and the Clerk closed the case.  ECF No. 7.  Plaintiff then filed a *Ex Parte* Motion to Reopen the Case so that it may file a Motion for Appointment of Receiver, which the Court granted on June 13, 2025, and subsequently appointed Rampart/Wurth Holdings, Inc. as receiver of the Apartments on Plaintiff's motion.  ECF Nos. 8, 9, 10, 13.

## II.    PENDING MOTION

On June 28, 2025, Movant Sewerage and Water Board of New Orleans ("SWBNO") filed this Motion for Leave to Intervene seeking to assert a claim against Defendant for unpaid services but requesting a judgment against Plaintiff (not Defendant) for $465,695.42.  *See* ECF Nos. 16, 16-2.  SWBNO argues it is entitled to intervene as of right pursuant to Rule 24(a)(2) of the Federal Rules of Civil Procedure as its application is timely and, because it seeks to collect $465,694.42 in unpaid services, it has a direct, substantial, legally protectable interest in the proceedings.  ECF No. 16-1 at 5-8.[1]  SWBNO further argues that Plaintiff's foreclosure would extinguish its right to pursue collection of the funds owed by Defendant, and neither Plaintiff nor Defendant has a reason to protect SWBNO's interest.  *Id.* at 8-9.  Alternatively, SWBNO requests permissive intervention pursuant to Rule 24(b).  *Id.* at 9-10.

In Opposition, Plaintiff notes that, on April 16, 2025, SWBNO filed a suit on open account against Defendant in state court seeking to recover the outstanding debt.  ECF No. 19 at 2; *see* ECF No. 19-1; *see also* ECF No. 16-2 ¶ 4.  Plaintiff argues that SWBNO is not entitled to intervention as of right because the application is untimely, SWBNO has not made the requisite

---

[1]SWBNO also argues that the June 18, 2025, Order was not signed by Judge Zainey (ECF No. 16-1 at 6), but he did in fact sign the Order.  ECF No. 13.

strong showing for intervention after final judgment has been entered, and SWBNO has not described what form of relief it requests.  ECF No. 19 at 3-5.  Plaintiff asserts that SWBNO's interest in collecting its outstanding debt has no relation to this case and can be litigated in state court.  *Id.* at 5.  Further, while SWBNO conclusorily asserts that it will suffer economic harm, it has no privilege on the property, and any judgment that it may obtain against Defendant would rank inferior to Plaintiff's mortgage.  *Id.* at 5-6 & 6 n.5 (citing 2025 La. Sess. Law. Serv. Act 99 (West)).[2]  Moreover, Plaintiff, as trustee, has no liability for any debts of the Defendant or arising from the Apartments.  *Id.* at 6.  Plaintiff then argues SWBNO cannot establish inadequate representation of its interest by the existing parties because SWBNO has no interest in the case to protect.  *Id.* at 6-7.  Plaintiff also contends that permissive intervention is improper because there is no common question in law or fact between Plaintiff's claim and SWBNO's debt collection claim, and SWBNO has no interest in *this* case, meaning disposition of the case will not impair SWBNO's ability to protect its interest.  *Id.* at 7-9.

In Reply, SWBNO asserts that it seeks to recover from Defendant based on unjust enrichment and that its application to intervene is not untimely (despite entry of final judgment) because the case has been reopened, it has an interest in the case, and its interest is inadequately represented by the existing parties.  ECF No. 20 at 2, 4-7.  As to permissive intervention, SWBNO argues there is a common question of law or fact because both it and Plaintiff are creditors of Defendant, and both have a fiduciary duty to the public to protect the interest of the institutions they represent.  *Id.* at 8.  Separately, SWBNO requests that, if the Court does not grant the intervention, the Court stay the proceedings until LA. REV. STAT. § 33:4887 goes into effect.  *Id.* at 2-3.

---

[2] Act No. 99 of the 2025 Regular Session of the Louisiana Legislature enacts LA. REV. STAT. § 33:4887, which went into effect on August 1, 2025.  2025 La. Sess. Law. Serv. Act 99 (West).

## III.   APPLICABLE LAW AND ANALYSIS

### A.  Subject Matter Jurisdiction

Federal courts are obliged to thoroughly examine their own jurisdiction, *sua sponte* if necessary.[3]

Here, the underlying case is premised solely on diversity jurisdiction.[4]   Although supplemental jurisdiction under 28 U.S.C. § 1367 often supports an intervention claim,[5] § 1367(a) requires the claim to be so related to the original claims that they form part of the same case or controversy, "or in other words, that they 'derive from a common nucleus of operative fact.'"[6] Here, SWBNO's claim and Plaintiff's claim do not derive from a common nucleus of operative fact because Plaintiff's claim arises from the various agreements Defendant executed in connection with the loan,[7] and SWBNO has not demonstrated any connection between its unpaid services claim and the loan and mortgage agreements at issue in the underlying case.[8]

Moreover, supplemental jurisdiction does not apply when an intervening plaintiff is not diverse because that would be inconsistent with § 1332's requirement for complete diversity.[9]  And while § 1367(b)'s jurisdictional limitation may not extend to intervening defendants,[10] SWBNO's

---

[3] *Villareal v. Smith*, 201 F. App'x 192, 193 (5th Cir. 2006) (citing *United States v. Hays*, 515 U.S. 737 (1995); *Marshalls v. Gibson's Prods., Inc.*, 584 F.2d 667, 672 (5th Cir. 1978)); *see also Burciaga v. Deutsche Bank Nat'l Tr. Co.*, 871, F.3d 380, 384 n.4 (5th Cir. 2017) ("[C]ourt[s] [are] duty-bound to examine [their] subject-matter jurisdiction sua sponte." (citations omitted)) (alterations in original).
[4] ECF No. 1 at 2-3, 13.  Section 1332 requires there be complete diversity between all plaintiffs and all defendants and an amount in controversy that exceeds $75,000.  *Lincoln Prop. Co. v. Roche*, 546, U.S. 81, 89 (2005).
[5] *Chambers Med. Found. v. Chambers*, 236 F.R.D. 299, 302 (W.D. La. 2006) (citing 28 U.S.C. § 1367(a) ("Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.")), *aff'd sub nom. Chambers Med. Found. v. Petrie*, 221 F. App'x 349 (5th Cir. 2007).
[6] *Harbour v. Sirico*, No. 18-1055, 2019 WL 2338504, at *4 (M.D. La. June 3, 2019) (quoting *Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966))).
[7] ECF No. 1 ¶¶ 19-21.
[8] *See S J Associated Pathologists, P.L.L.C. v. Cigna Healthcare of Tex., Inc.*, 964 F.3d 369, 373-74 (5th Cir. 2020) (finding § 1367(a) not satisfied because supplemental claims had no demonstrated "connection" to the original claims, which arose from a "completely separate contract" that had nothing to with the supplemental claim defendant).
[9] 28 U.S.C. § 1367(b); *White v. New Orleans & Gulf Coast Ry. Co.*, No. 19-10389, 2021 WL 5387665, at *1 (E.D. La. Nov. 18, 2021).
[10] See *Griffin v. Lee*, 621 F.3d 380, 386-87 (5th Cir. 2010) (per curiam) (quoting *Exxon Mobil Corp. v. Allapattah Servs. Inc.*, 545 U.S. 546, 567 (2005); and citing *State Nat'l Ins. Co. v. Yates*, 391 F.3d 577, 581 (5th Cir. 2004)); *see*

assertion that it seeks to intervene as a defendant[11] does not preclude its proper alignment as an intervening plaintiff.[12]

In this case, SWBNO is more properly aligned as a intervenor-plaintiff for several reasons: (1) a party that voluntarily chooses to intervene in ongoing federal litigation to assert its own affirmative claims is to be aligned as a party plaintiff;[13] (2), an intervenor is only aligned as a defendant if it has potential liability to the plaintiff on the primary claim;[14] (3) plaintiff's and intervenor's competition to recover from the same defendant, while adverse, is not the collision of interests at issue in assessing alignment;[15] and (4) SWBNO is not subject to potential liability relative to the primary claim (i.e., Plaintiff's enforcement of its note and mortgage against Defendant and its property).[16] When properly aligned as intervenor-plaintiff in this diversity case, SWBNO must demonstrate an independent jurisdictional ground to support the claim.[17]

SWBNO proposed intervention invokes the Court's diversity jurisdiction under § 1332. ECF No. 16-2 ¶ 3. It alleges that Plaintiff is a Mississippi citizen, Defendant is a Tennessee citizen,

---

*also Chambers*, 236 F.R.D. at 302 ("This silence has led courts to conclude that we may exercise supplemental jurisdiction over intervenor-defendants." (citing cases)); *see also Mattel, Inc. v. Bryant*, 441 F. Supp. 2d 1081, 1097 (C.D. Cal. 2005) (quoting Joan Steinman, *Supplemental Jurisdiction in § 1441 Removed Cases: An Unsurveyed Frontier of Congress' Handiwork*, 35 ARIZ. L. REV. 305, 344–45 (1993)), *aff'd*, 446 F.3d 1011 (9th Cir. 2006); *Home Ins. Co. v. Hughes*, No. 95-1833, 1996 WL 109292, at *1 (E.D. La. Mar. 11, 1996) (allowing intervention of non-diverse, non-indispensable defendant asserting claims).

[11] ECF No. 20 at 1.

[12] *Ashford v. Aeroframe Servs., L.L.C.*, 907 F.3d 385, 387 (5th Cir. 2018) ("[F]ederal courts are not bound by the labels the parties give themselves in the pleadings."); *Chesapeake La., L.P. v. Buffco Prod., Inc.*, 564 F. App'x 751, 755 (5th Cir. 2014) ("[Courts] must 'look beyond the pleadings and[] arrange the parties according to their sides in the dispute' to ensure that the parties have a 'collision of interest[s]' over the 'principal purpose of the suit' and the 'primary and controlling matter in dispute.'" (quoting *City of Indianapolis v. Chase Nat'l Bank of City of N.Y.*, 314 U.S. 63, 69 (1941))).

[13] *See, e.g., Chesapeake La.*, 564 F. App'x at 756; *MCI Telecomms. v. Logan Grp.*, 848 F. Supp. 86, 89 (N.D. Tex. 1994).

[14] *Chesapeake La.*, 564 F. App'x at 756 (citing 16 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 104.46 (3d ed. 2013) ("The intervenor must be potentially liable to the plaintiff on the primary claim in order to be treated as a defendant to whom supplemental jurisdiction may apply under Section 1367(b).")); *see MCI Telecomms.*, 848 F. Supp. at 88–89 (finding that intervener had no interest placed at risk by the complaint and therefore could not intervene as a defendant).

[15] *Chesapeake* La., 564 F. App'x at 755 (reversing district court's alignment of intervenor as defendant because intervenor and plaintiff both sought to collect from limited fund).

[16] *See Merit Elec., Inc. v. Motiva Enters., LLC*, No. 10-501, 2011 WL 900306, at *2 (M.D. La. Mar. 14, 2011).

[17] *Chambers*, 236 F.R.D. at 302.

and the amount in controversy exceeds $75,000, but it does not include any allegations whatsoever as to its own citizenship. *See* ECF No. 16-2 ¶¶ 1-3. Absent distinct and affirmative allegations of its own citizenship, it is impossible for the Court to determine whether the diversity of citizenship requirement is satisfied.[18] That deficiency, coupled with § 1367(b)'s limitation on supplemental jurisdiction when inconsistent with § 1332, demonstrates that SWBNO has failed to establish subject matter jurisdiction over its proposed intervention.

In recognition of the strong likelihood that SWBNO could affirmatively allege the existence of diversity jurisdiction given the other parties' citizenship in states other than Louisiana, the Court will proceed to address the intervention request.

### B. <u>Intervention of Right</u>

To be entitled to intervene as of right pursuant to Rule 24(a), the movant must establish: (1) it timely applied for intervention; (2) it has an interest relating to the property or transaction that is the subject of the case; (3) disposition of the case may practically impair or impede their ability to protect that interest; and (4) is inadequately represented by the existing parties.[19] The movant bears the burden in establishing these elements,[20] and failure to satisfy any one requirement precludes intervention as of right.[21] Rule 24 is to be "liberally construed," with "doubts resolved in favor of the proposed intervenor."[22]

Although SWBNO appears to suggest that it seeks a monetary judgment against Plaintiff,

---

[18] *Tolliver v. U-Haul Co. of Tex.*, No. 09-313, 2017 WL 9565856, at *2 (W.D. La. June 8, 2017) (dismissing intervenor-plaintiff's motion for leave to file an amended complaint because it failed to properly allege the citizenship of itself and the defendant), *R.&R. adopted*, 2018 WL 3040754 (W.D. La. June 19, 2018). "It has long been the case in this circuit that when jurisdiction is based on diversity, courts must strictly adhere to the rule that citizenship of the parties be "distinctly and affirmatively alleged." *Id.* at *2 (quoting *Getty Oil Corp. v. Ins. Co. of N. Am.*, 841 F.2d 1254, 1259 (5th Cir. 1988)).

[19] *Adam Joseph Res. v. CNA Metals Ltd.*, 919 F.3d 856, 865 (5th Cir. 2019) (citing FED. R. CIV. P. 24(a); *Sierra Club v. Espy*, 18 F.3d 1202, 1204–05 (5th Cir. 1994)).

[20] *Brumfield v. Dodd*, 749 F.3d 339, 341 (5th Cir. 2014).

[21] *Edward v. City of Hous.*, 78 F.3d 983, 999 (5th Cir. 1996).

[22] *Entergy Gulf States La., L.L.C. v. U.S. E.P.A.*, 817 F.3d 198, 203 (5th Cir. 2016) (quoting *In re Lease Oil Antitrust Litig.*, 570 F.3d 244, 248 (5th Cir. 2009)).

the basis of its claim is its effort to collect unpaid invoices owed by Defendant, not Plaintiff. In either event, neither of the existing parties will adequately represent SWBNO's interest. Thus, the final requirement is satisfied, so the Court will address the other three requirements.

1. Timeliness

In assessing timeliness, the court considers (1) the length of time during which the intervenor knew or should have known of his interest in the case; (2) the extent of prejudice to the existing parties; (3) the extent of prejudice to the would-be intervenor; and (4) unusual circumstances.[23] The requirement of timeliness guards against prejudicing the original parties by failure to apply sooner, but federal courts should allow intervention "where no one would be hurt and greater justice could be attained."[24] Timeliness is not measured in absolute terms but rather is assessed based on the circumstances.[25] The entry of final judgment does not provide a bright line.[26] Of course, post-judgment intervention "is rare,"[27] but it is not prohibited.[28] Therefore, even if a motion to intervene is filed after entry of final judgment, a court must still consider the timeliness factors.[29]

The first factor focuses on "the time lapse between the applicant's receipt of actual or constructive knowledge of his interest in the litigation and the filing of his motion for intervention"; the clock runs "either from the time the applicant knew or reasonably should have

---

[23] *CNA Metals*, 919 F.3d at 865 (citing *Stallworth v. Monsanto Co.*, 558 F.2d 257, 264-66 (5th Cir. 1977)).

[24] *Id.* (quoting *Sierra Club*, 18 F.3d at 1205).

[25] *Wal-Mart Stores, Inc. v. Tex. Alcoholic Beverage Comm'n*, 834 F.3d 562, 565 (5th Cir. 2016).

[26] *See Ross v. Marshall*, 426 F.3d 745, 754 (5th Cir. 2005) ("[W]hether the request for intervention came before or after the entry of judgment [is] of limited significance." (quoting *Stallworth*, 558 F.2d at 266)).

[27] *Edwards*, 78 F.3d at 1001 (quoting *United States v. Allegheny-Ludlum Indus., Inc.*, 553 F.2d 451, 453 (5th Cir. 1977)).

[28] *See Ross*, 426 F.3d at 754 ("We have . . . allowed post judgment intervention of right in some cases." (citing *Ceres Gulf*, 957 F.2d at 1203-04; *Baker v. Wade*, 769 F.2d 289, 291 (5th Cir. 1985) (en banc), *rev'd on other grounds by Lawrence v. Texas*, 539 U.S. 558 (2003))).

[29] *Hodges, Grant & Kaufmann v. U.S. Gov't, Dep't of Treasury, I.R.S.*, 762 F.2d 1299, 1302 (5th Cir. 1985) ("Although the mere fact that judgment already has been entered does not by itself require an application for intervention to be denied, the timeliness of such a motion must be evaluated under the standards enunciated in *Stallworth v. Monsanto Co.*").

known of his interest, or from the time he became aware that his interest would no longer be protected by the existing parties to the lawsuit."[30]  Courts "look to the actions of the litigants" to make this determination.[31]  Here, SWBNO does not provide any factual basis to establish when it first knew or reasonably should have known of its interest in this case or when it became aware that the interest was no longer protected by the parties.  The starting point could have occurred when Plaintiff filed suit on June 6, 2025, or obtained the Judgment on June 11, 2025, neither of which is much earlier than when SWBNO filed its deficient motion to intervene on June 20, 2025.[32]  This short delay weighs in favor of timeliness.[33]

The second factor "is concerned 'only [with] that prejudice which would result from the would-be [intervenor's] failure to request intervention as soon as he knew or reasonably should have known about his [stake] in the action.'"[34]  Prejudice "must be measured by the delay in seeking intervention, not the inconvenience to the existing parties of allowing the intervenor to participate in the litigation."[35]  The likelihood that intervention may interfere with orderly judicial processes must be "ignore[d]."[36]  Because of the short time period at issue and SWBNO's effort to intervene shortly after it became aware that the parties would not protect its interest, there is no

---

[30] *Edward*, 78 F.3d at 999 (citing *Stallworth*, 558 F.2d at 264).

[31] *Gen. Land Off. v. Trump*, No. 24-40447, 2025 WL 1410414, at *4 (5th Cir. May 15, 2025) (per curiam) (quoting *United States ex rel. Hernandez v. Team Fin., L.L.C.*, 80 F.4th 571, 578 (5th Cir. 2023)).

[32] *See* ECF Nos. 1, 7, 14.

[33] *See Rotstain v. Mendez*, 986 F.3d 931, 938 (5th Cir. 2021) ("In many of our cases where we have found intervention motions to be timely, the delay was much shorter." (citing *Sierra Club*, 18 F.3d at 1206 (delay of three weeks); *Edwards*, 78 F.3d at 1000 (delays of 37 and 47 days); *John Doe No. 1 v. Glickman*, 256 F.3d 371, 376 (5th Cir. 2001) (delay of one month))).

[34] *Gen. Land Off.*, 2025 WL 1410414, at *5 (second brackets added) (quoting *Glickman*, 256 F.3d at 378 (quoting *Stallworth*, 558 F.2d at 265)).

[35] *Sierra Club*, 18 F.3d at 1206.

[36] *Gen. Land Off.*, 2025 WL 1410414, at *5 (quoting *Glickman*, 256 F.3d at 378); *see also Stallworth*, 558 F.2d at 266 ("[W]hile the likelihood that intervention may interfere with orderly judicial processes may be considered by the district court in deciding whether to intervention under section (b) of Rule 24, or in deciding to what extent an intervenor should be allowed to participate in the litigation, it has nothing to do with timeliness.").

prejudice to the existing parties resulting from SWBNO's delay in moving to intervene.[37]

The third factor "focuses on the prejudice intervenor would suffer if not allowed to intervene."[38]  "Courts have held that there is no prejudice and therefore '[i]intervention generally is not appropriate where the applicant can protect its interests and/or recover on its claim through some means,'"[39] such as an already pending lawsuit.[40]  But a would-be intervenor may still be prejudice where the resolution of the current case could limit the relief available in separate litigation.[41]  Courts must assess whether the case's resolution would restrict "any potential remedy" sought in another case.[42]

The fourth factor addresses unusual circumstances.  No one argues unusual circumstances.

2.  Interest

The second requirement for intervention of right requires the movant have an interest relating to the property or transaction that is the subject matter of the case.[43]  The subject of the underlying action is Plaintiff's collection on a note secured by a mortgage and enforcement of its mortgage on Defendant's property.  SWBNO asserts its related interest is its ability to collect on its own separate obligation (i.e., unpaid sewage and water bills) owed by Defendant for services provided to Defendant's property.  *See* ECF No. 16-1 at 7-8.

There is no clear definition of the nature of the "interest" that Rule 24(a)(2) requires, but the Fifth Circuit has interpreted the Rule to require a "direct, substantial, legally protectable

---

[37] *See Ceres Gulf*, 957 F.2d at 1203 (finding second *Stallworth* factor favored intervention, even though final judgment was signed a day before the filing of the motion, because movant moved 14 days after learning the action was pending).
[38] *Ross*, 426 F.3d at 756.
[39] *Gen. Land Off.*, 2025 WL 1410414, at *6 (quoting *Deus v. Allstate Ins. Co.*, 15 F.3d 506, 526 (5th Cir. 1994)).
[40] *See Deus*, 15 F.3d at 526.
[41] *Gen. Land Off.*, 2025 WL 1410414, at *6 (citing *Glickman*, 256 F.3d at 379).
[42] *Id.* at *7 (quoting *Ford v. City of Huntsville*, 242 F.3d 235, 240 (5th Cir. 2001)); *see also Lease Oil*, 570 F.3d at 249 ("Texas also might have pursued its interest by suing the settlement administrator in state court . . . . If Texas won such a suit, however, . . . [t]he settlement administrator would be presented with conflicting federal and state orders regarding the same property.").
[43] *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.* (*NOPSI*), 732 F.2d 452, 463 (5th Cir. 1984) (en banc).

interest in the proceedings,"[44] that is, an interest which the "substantive law recognizes as belonging to or being owned by the applicant."[45] The "inquiry turns on whether the intervenor has a stake that goes beyond a generalized preference that the case come out a certain way."[46]

A property interest is "the most elementary type of right that Rule 24(a) is designed to protect."[47] "A security interest in property is clearly a form of property[,] . . . [a]nd the Fifth Circuit has repeatedly held that a party with a security interest in real or personal property has a property interest that can support a motion to intervene."[48] Non-property interests are sufficient to support intervention too but only when "they are concrete, personalized, and legally protectable."[49] A "legally protectable interest" does not mean the interest must be "legally enforceable," rather the "interests is sufficient if it is of the type the law deems worth of protect, even if the intervenor does not have an enforceable legal entitlement or would not have standing to pursue her own claim."[50] However, an interest that is solely "ideological, economic, or precedential" is insufficient for intervention as of right.[51]

Additionally, the movant "must demonstrate an interest in the subject matter of [the case]

---

[44] *Texas v. United States*, 805 F.3d 653, 657 (5th Cir. 2015) (citations omitted).

[45] *NOPSI*, 732 F.2d at 464.

[46] *Texas*, 805 F.3d at 657.

[47] *Id.* at 658 (quoting *Diaz v. S. Drilling Corp.*, 427 F.2d 1118, 1124 (5th Cir. 1970)).

[48] *Star Floors Inc. v. TC Millwork Holdings Inc.*, No. 23-1618, 2024 WL 780450, at *3 (N.D. Tex. Jan. 19, 2024) (quoting *BCL-Equip. Leasing, LLC v. Davis*, No. 15-195, 2016 WL 115696, at *2 (E.D. Tex. Jan. 11, 2016)); *see Calvert Fire Ins. Co. v. Environs Dev. Corp.*, 601 F.2d 851, 858-59 (5th Cir. 1979) (a proposed intervenor has the right to intervene "on the theory that it may have an equitable lien in the insurance proceeds"); *Mothersill D.I.S.C. Corp. v. Petroleos Mexicanos, S.A.*, 831 F.2d 59, 62 (5th Cir. 1987) (a "person who possessed a security interest or whose claim was contingent on establishing liability in the main action" has the right to intervene; *Gilbert v. Johnson*, 601 F.2d 761, 767 (5th Cir. 1979) (attorney's lien on proceeds of claim justified intervention); *Ordnance Container Corp. v. Sperry Rand Corp.*, 478 F.2d 844 (5th Cir. 1973) (assignee of proceeds of contracts in suit as security for a promissory note has a sufficient interest to justify intervention under Rule 24(a)(2)); *Diaz*, 427 F.2d at 1124 (tax lien is "clearly a legally cognizable interest in property which it seeks to attach to a res that is before the court").

[49] *Texas*, 805 F.3d at 658.

[50] *La Union Del Pueblo Entero v. Abbot*, 29 F.4th 299, 305 (5th Cir. 2022) (emphasis omitted) (quoting *Texas*, 805 F.3d at 659).

[51] *Star Floors Inc.*, 2024 WL 780450, at *3 (quoting *La Union*, 29 F.4th at 305).

and that its disposition may realistically impair that interest"[52]  In other words, the movant must have an interest "that is related to the property or transaction that forms the basis of the controversy."[53]

To date, SWBNO does not allege that it has obtained a money judgment against Defendant for Defendant's failure to pay its outstanding utility bills, which judgment would act as a judicial mortgage on Defendant's property.  LA. CIV. CODE art. 3299.  Nor does SWBNO allege that is has any type of lien or existing property interest in Defendant's property.  Rather, SWBNO *has a claim* for monetary damages against Defendant for breach of contract or unjust enrichment because it has not been paid for the sewage and water services that it provided to Defendant's property, the Apartment.

Evidently conceding that it does have any recognized, existing security interest, SWBNO argues that it may in the future have a security interest in the Apartments pursuant to LA. REV. STAT. § 33:4887, enacted by Act No. 99 of the 2025 Regular Session of the Louisiana Legislature, and that potential future security interest is placed at risk by a potential foreclosure.[54]  Section 33:4887, which went into effect on August 1, 2025,[55] provides:

> A. The governing authority of a municipality shall have a privilege against a multifamily residential property for the amount of any unpaid service charge or user fee for sewage disposal or water system services the municipality provides. The privilege shall apply only to multifamily residential property that uses a master meter service agreement in which a single water meter or collection of meters measures the total water or sewage services usage for the entire property or multiple units within a development. For purposes of this Section, multifamily residential property shall mean immovable property consisting of more than four dwelling units occupied by persons other than the owner of the immovable property.[56]

---

[52] *Id.* at *4 (quoting *Arnold v. City of San Antonio*, No. 07-877, 2009 WL 2983038, at *3 (W.D. Tex. Sept. 14, 2009) (citing *United States v. Tex. E. Transmission Corp.*, 923 F.2d 410, 412 (5th Cir. 1991))).
[53] *Cal Data Sys., Inc. v. NCS Pearson, Inc.*, No. 07-1390, 2008 WL 1730539, at *3 (S.D. Tex. Apr. 10, 2008) (quoting *Saldano v. Roach*, 363 F.3d 545, 551 (5th Cir. 2004)).
[54] *See* ECF No. 20 at 7.
[55] 2025 La. Sess. Law. Serv. Act 99 (West).
[56] *Id.* (§ 33:4887).

This privilege arises when, thirty days after the municipal governing authority makes written demand for past due amounts on the owner of the multifamily residential property,[57] the municipal governing authority files a sworn statement of privilege in the mortgage records of the parish where the property is located specifying the unpaid services charges and user fees.[58]  The privilege is effective against third parties when recorded, and outranks mortgages, privileges, and other rights that become effective against third parties after the recordation of the statement of privilege.[59] SWBNO has not demonstrated that it qualifies as the "municipal governing authority" that could obtain that privilege,[60] and even if it does qualify, that it has taken the necessary steps to obtain it.[61]  Thus, it currently has no privilege.

Further, it is not clear that §33:4887 applies retroactively to create a privilege for unpaid services that became due before the statute's effective date of August 1, 2025.  "In the absence of contrary legislative expression, substantive laws apply prospective only. Procedural and interpretative laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary."[62]  In this case, the Louisiana Legislature did not provide any "clear and unmistakable expression" that the statute applies retroactively.[63]  If anything, the enactment evidences a legislative intent that it only be given prospective effect because it has a delayed effective date.[64]  Moreover, the statute establishes a new "right," making it a substantive rather

---

[57] *Id.* (§ 33:4887(B)-(C)(3)).
[58] *Id.* (§ 33:4887(D)-(E)(1)(d)).
[59] *Id.* (§ 33:4887(E)(2)).
[60] *Id.* (§ 33:4887(D)).
[61] *Id.* (§ 33:4887(B)-(C)(3), E(1)(a)-(d)).
[62] LA. CIV. CODE art. 6.  In determining whether a Louisiana enactment has retroactive applicability, a federal court in a diversity suit first determines whether the Louisiana Supreme Court has addressed the issue.  *Holt v. State Farm Fire & Cas. Co.*, 627 F.3d 188, 191 (5th Cir. 2010).  If it has not, the Court must make an *Erie* guess.  *Id.* at 192. The Louisiana Supreme Court has not addressed the retroactive applicability of the enactment of § 33:4887.
[63] *Holt*, 627 F.3d at 192.
[64] *See St. Paul Fire & Marine Ins. Co. v. Smith*, 609 So. 2d 809, 822 (La. 1992).

than procedural enactment.[65]  Whether the SWBNO could even rely on this statute to create a lien

for pre-August 1, 2025, unpaid bills is uncertain.

 Given that SWBNO has not established a property interest in the Apartments, its alleged

interest is simply an economic interest (i.e., its ability to collect the unpaid sewage and water bills

owed by Defendant).[66]  That economic interest is not an interest directly related to the agreements

between Plaintiff and Defendant.[67]  SWBNO's concern that Plaintiff's potential foreclosure on the

Apartments may impact its ability to collect from Defendant does not give rise to an interest that

supports intervention of right.[68]  To hold otherwise would enable virtually any creditor (or potential

creditor) to intervene in a lawsuit where damages might be awarded, directly contradicting Rule

24(a)(2)'s requirement that the asserted interest relate to the property or transaction that is the

subject matter of the action.[69]  And while SWBNO may have a viable claim to recover a money

---

[65] LA. CIV. CODE art. 3186 ("*Privilege* is a right, which the nature of a debt gives to a creditor, and which entitles him to be preferred before other creditors, even those who have mortgages.").

[66] *See Star Floors Inc.*, 2024 WL 780450, at *4 ("[W]hen the interest 'is any eventual damages' the party may recover, it is a solely economic interest that is insufficient for intervention." (citations omitted)); *Ouch v. Sharpless*, 237 F.R.D. 163, 166 ("Khun has no substantive interest in the dispute between Ouch and Sharpless, rather, his sole interest rests in any eventual damages that Ouch may recovery from Sharpless.").

[67] *See Mothersill*, 831 F.3d at 62 ("Although [movant] clearly wished to collect from the settlement fund, he had no direct legal right to do so. Assuming that [movant] had a contract with his employer and the contract promised [movant] payment for his work in dealing with [defendant], [movant] did not have a legal interest in the proceeds from the . . . contract."); *Lowe v. Am. Accts. Mgmt, Inc.*, No. 08-137, 2009 WL 13060683, at *4 (N.D. Tex. May 15, 2009) ("As an alleged creditor on debts owed by Plaintiff, Movant has an economic interest, but this is not directly related to the potential awards Plaintiff could receive if she prevails in this action. . . . Plaintiff's claims involve improper debt collection *conduct* on the part of Defendant, and do not involve in the dispute any funds that Movant may mis-identify as being the fulcrum of the case.").

[68] *Lowe*, 2009 WL 13060683, at *3 (citing *Haw.-Pac. Venture Cap. Corp. v. H.B. Rothbard*, 564 F.2d 1343, 1346 (9th Cir. 1977) (the potential for impaired collectability of debts on future claims does not give rise to intervention); *Cal Data Sys.*, 2008 WL 1730539, at *3 (citing *Haw.-Pac. Venture Cap. Corp.*, 564 F.2d at 1346 (same)).

[69] *See United States v. Alisal Water Corp.*, 370 F.3d 915, 920 (9th Cir. 2004); *Af-Cap, Inc. v. Congo*, No. 01-321, 2005 WL 8155157, at *2 (W.D. Tex. June 16, 2005) ("There is no reason to believe the Fifth Circuit would expand the scope of [*Diaz*, which permitted intervention based on a lien on the funds at issue,] to permit *any* creditor to intervene in an action involving the general assets of the debtor against whom the creditor seeks to collect. Furthermore, the Court agrees with the *Alisal* court's analysis that permitting a 'collectability' interest to serve as a sufficient basis for Rule 24 intervention would turn every damages action into a potential creditor's free-for-all."); *Star Floors Inc.*, 2024 WL 780450, at *4 (citing 6 MOORE'S FEDERAL PRACTICE -CIVIL § 24.03 (2023) ("A movant may not intervene to protect a right to enforce a money judgment from an unrelated action. An interest in the collectability of a debt is not an interest 'relating to the property or transaction which is the subject of the action.'")); *see also Mothersill*, 831 F.3d at 62 ("[Movant] conceded that he claims an unconditional right to payment from his employer, not one that depended

---

judgment against Defendant, it advances no theory that establishes it has a legally protectable interest in the pending litigation or property as necessary to support intervention of right.[70]

   3.  <u>Practical Impairment</u>

    "The impairment requirement does not demand that the movant be bound by a possible future judgment."[71]  The movant need only establish that the disposition of the case "may," not will, impair or impede its ability to protect its interest.[72]  However, the impairment must be "practical" and not merely "theoretical."[73]  Assuming that SWBNO's interest in the collectability of the debt owed by Defendant were a sufficient interest, SWBNO has not established that the disposition of this case may impair or impede its ability to protect that interest.

    Again, "[i]intervention generally is not appropriate where the [movant] can protect its interests and/or recover on its claim through some means," such as an already pending lawsuit.[74]  And while the possibility of bringing a lawsuit or having one pending "does not suffice to deny intervention,"[75] it is the movant's burden to demonstrate the disposition of the case would practically impair its interest.[76]

    SWBNO acknowledges that it has brought an action against Defendant to collect on the outstanding balance in state court.  ECF No. 16-2 ¶ 4.  However, it argues the Court's recognition of Plaintiff's right to foreclose under the mortgage "would extinguish any rights/abilities" it has

---

on the success of the . . . project or on the appellants' ability to recover from [the defendant]. In essence, [movant's] claim was no different from any other unsecured creditor whose claim arose from the project.").
[70] *See Mothersill*, 831 F.2d at 62 (citing *NOPSI*, 732 F.2d at 464).
[71] *Gen. Land Off.*, 2025 WL 1410414, at *9 (quoting *Brumfield*, 749 F.3d at 344).
[72] *Id.* (quoting *Brumfield*, 749 F.3d at 344).
[73] *Star Floors Inc.*, 2024 WL 780450, at *4 (quoting *La Union*, 29 F.4th at 307); *accord. Gen. Land Off.*, 2025 WL 1410414, at *9 ("Our precedent 'focuses on practical consequences.'" (quoting *CNA Metals*, 919 F.3d at 867)).
[74] *See Deus*, 15 F.3d at 526.
[75] *Gen. Land Off.*, 2025 WL 1410414, at *9 (citing *CNA Metals*, 919 F.3d at 867 (rejecting same argument because it "runs counter to the text of Rule 24 and our precedent")).
[76] *See Star Floors Inc.*, 2024 WL 780450, at *5 ("[T]here is no argument by [the movant] that the disposition of the current case would subject [it] to any form of res judicata, collateral estoppel or stare decisis in its claim against Respondents for any monies owed. . . . Nothing in the current case prevents [movant] from bringing a lawsuit against [plaintiff] to enforce their security interest." (citations omitted)).

14

in the Apartments.  ECF No. 20 at 7; *see* ECF No. 7 at 5.  But again, SWBNO does not allege that it has any specific existing rights in the Apartments, and thus, it is not seeking to protect or enforce any property rights in the Apartments.  Rather, SWBNO seeks monetary relief via a breach of contract or unjust enrichment claim,[77] and it appears to argue that, as a practical matter, Plaintiff's foreclosure will result in a loss of Defendant's assets to the detriment of SWBNO's recovery efforts.  SWBNO's concern about its ability to collect a potential judgment does not mean that the potential foreclosure somehow restricts the state court's ability to issue a monetary award in its favor against Defendant.

*      *      *

"Failure to satisfy any one requirement precludes intervention of right."[78]  Although consideration of the relevant factors governing timeliness leads the Court to conclude that the motion to intervene is timely, SWBNO has not established the second and third requirements for intervention of right (i.e., it has an interest relating to the property that may be impaired or impeded absent intervention).  Accordingly, SWBNO it is not entitled to intervene pursuant to Rule 24(a)(2).  If the SWBNO were to obtain a legally recognizable privilege or interest in the property, it may at that point seek to intervene to protect that interest.  But at this time, it has only an economic interest, not a legal interest in the property as necessary to support intervention.

### C. <u>Permissive Intervention</u>

Because SWBNO is not entitled to intervene as of right, the Court must determine whether permissive intervention is proper.  Federal Rule of Civil Procedure 24(b) governs permissive intervention and provides in pertinent part:

---

[77] ECF Nos. 16-2, 20 at 2.
[78] *Star Floors Inc.*, 2024 WL 780450, at *6 (citation omitted).

15

(1) On timely motion,[79] the court may permit anyone to intervene who:
    (A) is given a conditional right to intervene by a federal statute; or
    (B) has a claim or defense that shares with the main action a common question
       of law or fact.

In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights. FED. R. CIV. P. 24(b)(3).

In the Fifth Circuit, courts use a two-step process to determine whether to grant permissive intervention.[80] First, the court must determine, as a matter of law, whether the movant's "claim or defense and the main action have a question of law or fact in common."[81] Thereafter, the court must exercise its discretion to determine if permissive intervention should be allowed.[82] "Permissive intervention is wholly discretionary with the [district] court . . . even though there is a common question of law or fact, or the requirements of Rule 24(b) are otherwise satisfied."[83]

There is no common question of law or fact between Plaintiff's claim against Defendant and SWBNO's claim. While both Plaintiff and SWBNO have collection matters against Defendant, SWBNO's unjust enrichment claim is not related to Plaintiff's loan and foreclosure action.[84] Further, SWBNO does not assert that there is any common question of law between them. Nor is there any common question of fact. The mere fact that Plaintiff and SWBNO are both seeking to recover debts owed by Defendant does not mean there is "overlap" in any factual

---

[79] The timeliness of a motion for permissive intervention is assessed under the *Stallworth* factors. *See Hernandez*, 80 F.4th at 578-79. By timely moving to intervene as of right, SWBNO has also timely moved for permissive intervention.

[80] *Stallworth*, 558 F.2d at 269.

[81] *Id.*; *Mac Sales Inc. v. E.I. Dupont de Nemours*, No. 89-4571, 1995 WL 581790, at *4 (E.D. La. Sept. 29, 1995).

[82] *Mac Sales*, 1995 WL 581790, at *4; *see NOPSI*, 732 F.2d at 471.

[83] *NOPSI*, 732 F.2d at 471 (citation and quotations omitted).

[84] *See Del Bosque v. AT&T Advert. L.P.*, No. 08-402, 2010 WL 55962, at *3 (W.D. Tex. Jan. 4, 2010).

16

disputes that may arise from their claims; SWBNO's claim and Plaintiff's claim are factually distinct.[85]  Thus, permissive intervention is likewise improper.

IV.    **CONCLUSION**

Accordingly, for the foregoing reasons,

IT IS ORDERED that Movant Sewerage and Water Board of New Orleans' Motion for Leave to Intervene is DENIED.

New Orleans, Louisiana, this 13th August, 2025.

DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE

---

[85] *Cf. Hanover Ins. Co. v. Superior Lab. Servs., Inc.*, No. 11-2375, 2016 WL 1393388, at *6 (E.D. La. Apr. 8, 2016) (Morgan, J.) (permitting permissive intervention because, among other things, "the material factual disputes" in separate insurance policies "will most certainly overlap").  *Compare* ECF No. 16-2, *with* ECF No. 1.